E-FILED
Thursday, 29 June, 2006  04:25:26 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

RICK MOORE,                          )
                                     )
            Plaintiff,               )
                                     )
vs.                                  )     No.   05-3282
                                     )
                                     )
BLATT, HASENMILLER, LEIBSKER,        )
and MOORE, LLC,                      )
                                     )
            Defendant.               )

## OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the Defendant's motion for summary judgment [d/e 8], the Plaintiff's motion for summary judgment [d/e 20], and the Defendant's motion for summary judgment due to the Plaintiff's failure to respond [d/e 17].

## I. FACTUAL BACKGROUND

Plaintiff Rick Moore filed this lawsuit alleging that Defendant Blatt, Hasenmiller, Leibsker and Moore, LLC ("Blatt") violated the Fair Debt

1

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 <u>et</u> <u>seq.</u>  Specifically,

paragraph 17 of the Plaintiff's complaint alleges the following:

> Blatt has violated 15 U.S.C. 1692g of the FDCPA by
> failing within five days after its initial communication with
> Plaintiff to give him notice concerning the right to obtain
> validation of the debt, for continuing its debt collection efforts
> in the absence of ever having provided the notice, and by failing
> to cease debt collection activities for 30 days while validating the
> debt upon receiving Plaintiff's request for validation.

Plaintiff Rick Moore is a resident of Springfield, Illinois, and a

"consumer" within the meaning of 15 U.S.C. § 1692a(3).  Blatt is a law

firm, with its principal office located in Chicago, Illinois, which specializes

in consumer debt collection and is a "debt collector" within the meaning of

15 U.S.C. § 1692a(6).  The Plaintiff incurred charges on his Household

Bank credit card and then defaulted.  That account was charged off and

later sold to Midland Credit Management, Inc.   In December 2003,

Midland retained Blatt to pursue collection.

Blatt alleges that it sent the Plaintiff an initial demand letter, dated

January 2, 2004, seeking payment on the debt; that letter contained the

"validation notice" required by the FDCPA.  The Plaintiff disputes this

2

allegation on the basis that he never received such a letter. Blatt further asserts that on October 1, 2004, it filed suit on behalf of Midland in the Sangamon County Circuit Court. The Plaintiff was served with that lawsuit on October 20, 2004. Blatt notes that the Plaintiff was served at the same address where the initial demand letter had been sent nine months earlier. The Plaintiff disputes the portion of Blatt's allegation pertaining to the demand letter. According to its complaint, Midland sought $1,232.26, plus costs. The Plaintiff contends that the summons and complaint in <u>Midland Credit Management, Inc. v. Moore</u>, 2004-SC-5497, were the first documents he had ever received from Blatt; he claims never to have received any correspondence from Blatt. Blatt disputes these allegations on the basis of the initial demand letter it claims to have sent to Plaintiff on January 2, 2004.

The Plaintiff asserts that no such demand letter was sent in January 2004. The Plaintiff states that he and his fiancé, who lives at the same address, regularly check their mail and open and read all mail, particularly any mail that appears to have legal or financial significance. According to

the Plaintiff, neither individual ever received, opened or read any correspondence from Blatt.  The Plaintiff further asserts that in early 2004, he and his fiancé experienced serious difficulties with their mail delivery service.  Neighborhood youths stole their mail; their mail was sometimes scattered in the area; it was sometimes placed in their neighbors' mailboxes and expected mail sometimes never arrived.  The Plaintiff claims these problems were eventually resolved and/or ceased, but not until after January 2004.  Blatt contends these alleged problems are legally insufficient to overcome the presumption of receipt under the "mailbox rule."

The Plaintiff alleges that Blatt's own records reveal that not once between January 2, 2004 and October 20, 2004, when the 2004-SC-5497 complaint was served, did anyone from Blatt speak to him; therefore, Blatt never ascertained whether Moore had received the alleged January 2004 letter.  Blatt contends this is immaterial in that the lack of subsequent contact does not establish that the initial demand letter was not sent.  Moreover, Blatt claims its records indicate that it made several unsuccessful attempts at phone contact before filing suit.

4

On October 29, 2004, the parties appeared in court at which time the court directed the matter to be set over for trial.  The Plaintiff claims it was then that he informed Judge Hall (the presiding judge) that he disputed the debt.  Judge Hall wrote down the fact of the dispute and issued an order that a trial would be held, which the Plaintiff claims would only occur when a debt was disputed.  Blatt was notified in writing of the dispute on that day.  Blatt asserts the Plaintiff's allegation is immaterial, contending that whatever Plaintiff told Judge Hall does not satisfy § 1692g(b)'s requirement that, in order to trigger the collector's obligation to suspend collection efforts, the consumer must notify the debt collector in writing that the debt is disputed.  Blatt contends it is also immaterial (for the same reason) and denied that Judge Hall "wrote down the fact of the dispute" or that "Blatt was notified in writing of the dispute on that day."  Blatt claims no such writing has been produced and the court's docket entry for that day merely reflects "Continued for Setting."

The Plaintiff claims Blatt has acknowledged that in initial appearances in small claims cases in Sangamon County, if a defendant admits a debt

then a judgment is taken, but if a defendant disputes a debt it is set for trial. Only one of those two things can happen, and the only reason a case would be set for trial is because the defendant disputed the debt.  Blatt contends this is immaterial in that whatever the Plaintiff told Judge Hall does not satisfy § 1692g(b)'s requirement that the debt collector must be notified in writing that the debt is disputed.

The Plaintiff also claims that after being served with the complaint on October 20, 2004, but before the October 29, 2004 court appearance, he attempted to contact Blatt to discuss the complaint.  However, no individual attorney's name was on the complaint, and the Blatt representatives who answered the phone could not or would not provide Plaintiff with any information.  Blatt claims this allegation is immaterial and disputed, in that Blatt's account notes reflect no contact from Moore between October 20 and October 29.

On November 18, 2004, Blatt served the Plaintiff with a Notice of Trial setting the case for trial on January 3, 2005.  The Plaintiff claims that because he did not know what the lawsuit was about, and could not get

Blatt to explain it to him, Plaintiff was forced to retain counsel, who filed pleadings in the case and ultimately began a dialogue with Blatt.  Blatt alleges that these assertions are immaterial.  On or about December 23, 2004, the Plaintiff, through his attorney, filed a Section 2-619 motion to dismiss and noticed it to be heard on the date of trial.

On January 3, 2005, the parties agreed to settle the case for $700.00 plus $96.00 in court costs, for a total of $796.00, to be paid in monthly installments of $100.00 commencing on January 17, 2005, and continuing thereafter until paid in full.  Blatt drafted a proposed Stipulation Order and faxed it to counsel for the Plaintiff on the same day.  Counsel subsequently executed the Stipulation Order on behalf of the Plaintiff, and it was filed with the court on January 31, 2005.  The case was dismissed without prejudice with leave to reinstate if Plaintiff defaulted on his payment plan.

The Plaintiff made his first six payments without incident.  When Plaintiff was unable to make the July 2005 payment, counsel requested and Blatt agreed to a two-week extension.  The Plaintiff made his remaining payments and, in September 2005, the account was closed and marked paid

7

in full.

The Plaintiff alleges that he incurred debt for counsel's legal expenses of $2,518.23 as a result of Blatt's failure to provide pertinent information about the debt. Blatt disputes that Plaintiff has paid any legal expenses whatsoever, or that he will ever have to, or that Blatt's actions are the cause of any legal expenses. The parties have filed cross-motions for summary judgment.

## II. ANALYSIS

### A. Blatt's summary judgment motion

#### (1)

Blatt first notes that § 1692g(a) of the FDCPA provides that a debt collector must, within five days of its initial communication with a debtor, provide the consumer with a written notice (often referred to as the "validation notice") that, inter alia, advises the consumer of his right to dispute and seek verification of the debt. See 15 U.S.C. § 1692g(a). Although the Plaintiff claims that he never received such notice, and that the first contact he had with Blatt was when he was served with the

complaint on October 20, 2004, Blatt alleges it is undeniable that he sent an initial demand letter which contained the requisite validation notice to Plaintiff on January 2, 2004.

Blatt asserts that one of its partners, Ken Wake, testified about the process by which new collection accounts are received and downloaded into the computer system.   Once the account is loaded, the computer systematically generates the initial demand letter by inserting the account specific information into what is otherwise a standard form letter.   That standardized form letter contains the required FDCPA validation notice. Blatt alleges that in the Plaintiff's case, the computerized account notes confirm that the initial demand letter was sent on January 2, 2004.  The letter was sent to the same address where Plaintiff was later served with the lawsuit.

Blatt contends the Plaintiff has offered no evidence to rebut the fact that the January 2 letter was sent and that it contained the required validation notice.  He asserts only that he did not receive it.  However, Blatt claims it is not responsible for what happens at the Plaintiff's mailbox.  Blatt

9

notes that other courts have held that the FDCPA only requires the debt collector to send the notice, not to establish actual receipt.  See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1201-02 (9th Cir. 1999) (holding that § 1692g(a) requires only that a notice be sent by a debt collector and does not require the collector to establish actual receipt by the consumer); see also Van Westrienen v. Americontinental Collection Corp., 94 F. Supp.2d 1087, 1096-98 (D. Ore. 2000) (granting summary judgment for collector when evidence established that it followed its own ordinary business practices in sending out notice and plaintiff failed to present any evidence that notice was not sent, other than simply asserting she never received it).  Blatt notes that another court has observed that § 1692g(a) does not require the debt collector's written notification to be sent via certified mail.  See Walters v. PDI Management Services, 2004 WL 1622217, at *6 (S.D. Ind. April 6, 2004).

Based on the foregoing, therefore, Blatt contends the Plaintiff's assertion that he never received its January 2 letter is irrelevant because his burden is to establish that Blatt never sent the letter.  Because the Plaintiff

10

is unable to meet this burden, Blatt asserts his claims must be dismissed and judgment entered in its favor.

(2)

In his response, the Plaintiff asserts that he has strong doubts as to the accuracy of Blatt's claim that it sent the letter on January 2, 2004.  The Plaintiff claims that while he is certain he never received such a letter, he has no means of proving that the letter was not sent.  The Plaintiff acknowledges that if Blatt did send the notice on January 2, then it did not violate 15 U.S.C. § 1692g(a).  If the notice was sent, moreover, then Blatt correctly alleges that no such language was required to be included in the summons and complaint served on the Plaintiff on October 20, 2004.  The Plaintiff asserts, however, that if notice was not sent on January 2, 2004, then Blatt was obligated to include the language in the summons and complaint.  See Thomas v. Law Firm of Simpson & Cybak, 392 F.3d 914, 917 (7th Cir. 2004) (concluding that a summons and complaint can constitute an "initial communication" under the FDCPA, thereby triggering the protections of the Act).

The Plaintiff acknowledges that in either case, Blatt is correct that the limitations period has run on any action for those specific violations, but the violations are relevant to this Court's determination of an appropriate amount of statutory penalties, following a finding that Blatt violated § 1692g(b) by failing to provide the Plaintiff with debt validation information upon Plaintiff's timely dispute.  The Plaintiff claims that the only violation for which he seeks direct relief in this case is based on § 1692g(b), due to Blatt's failure to cease collection activities after Blatt was notified in writing of Plaintiff's dispute of the debt.  This, of course, assumes Blatt cannot prove that it mailed the initial demand letter in January 2004.

The Plaintiff claims that Blatt's reliance on the "mailbox rule" is misplaced.  The Plaintiff asserts that in order to avail itself of the "mailbox rule," Blatt must first create a legal presumption that the letter was mailed by showing either proof of actual mailing (that is, the testimony of someone who actually dropped the envelope in the mailbox), or proof of such regular and reliable office practices, along with regular and reliable record keeping, to establish that a letter had indeed gone out in the mail just as the office's

12

records indicate.  "To invoke the presumption of delivery, the government must either present evidence of actual mailing such as an affidavit from the employee who mailed the check, or present proof of procedures followed in the regular course of operations which give rise to a strong inference that the check was properly addressed and mailed."  <u>Godfrey v. United States</u>, 997 F.2d 335, 338 (7th Cir. 1993).  If the presumption is established, it carries the day unless refuted by evidence that the document never arrived or was never received by the recipient.  <u>See</u> <u>id.</u>, The Plaintiff alleges that Blatt's attempted reliance fails on both prongs of the "mailbox rule."

The Plaintiff notes that because Blatt has no witness that can testify about mailing the letter, Blatt attempts to rely on the testimony of Ken Wake concerning its regular and reliable office procedures.  According to Wake's affidavit, Blatt received the Moore file for collection in December 2003.  The Plaintiff notes that Wake then discussed generally the firm's computer-based debt collection practices:

> The initial demand letter is a standardized form letter, which is systematically generated, and coded in our system as 'BLD1.' The computer inserts the account-specific information into the appropriate fields and automatically generates the letter, usually

13

within 24–48 hours of our receipt of the file.  The letter is then downloaded in batch mode every day.  The firm's Office Services Department is responsible for downloading the letters from CUBS [Blatt's software system] and printing them.  Once printed and [sic] Office Services employee takes the letters to the mail room, feeds them into a Pitney Bowes automated letter folding machine which automatically folds the letter, stuffs each into an envelope and seals each envelope.  The employee then feeds each sealed envelope into a separate Pitney Bowes postage meter which weighs each envelope/letter and applies the appropriate metered postage.  The Office Services employee then takes that batch of mail and deposits it at the building's United States Post Office mail drop.

The Plaintiff contends that Wake's affidavit fails to account for what happened in late 2003 and early 2004.  The Plaintiff notes that, according to Blatt, the letter was supposedly sent to him on January 2, 2004.  However, the Plaintiff asserts that Wake's deposition testimony in another case in this district, Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, Case Number 05-3059, indicates that he was not particularly familiar with the specifics of Blatt's mailing practices.  Wake testified he was not certain what type of Pitney Bowes machine that Blatt was then using.  Moreover, he did not know whether the current daily download process described above was the same that was used from 1999-2003.  The Plaintiff further

14

asserts that Wake testified that a vendor may have done Blatt's mailing in 2003 (and therefore presumably on the first business day of 2004). The Plaintiff claims, therefore, that Wake failed to identify whether the mailing process was performed in-house at the time that the letter was allegedly mailed to the Plaintiff. Accordingly, the Plaintiff contends Blatt has failed to establish that the "mailbox rule" applies in this case.

Next, the Plaintiff states that Blatt's reliance on the "mailbox rule" is also misplaced because he has established that he never received any such letter. The Plaintiff notes that he and his fiancé maintained regular and reliable practices themselves in checking their mail, and were certain that they would have carefully reviewed any mail that appeared to be of legal or financial significance, including anything with Blatt's firm's name on it. The Plaintiff further notes that both he and his fiancé testified that despite their complaints to the postal authorities, someone was removing mail from their mailbox during the time in question. Both individuals testified that expected mail sometimes never arrived, and they found mail on their driveway and in other places where it should not have been.

15

Based on the foregoing, the Plaintiff asserts that it is far from certain that any mail addressed to him ever left Blatt's offices.  The Plaintiff claims that Blatt never again contacted him until serving him with a complaint and summons.  Thus, there is no record of any conversation with the Plaintiff in which he acknowledged having received the letter, or any other reason why Blatt should have assumed that the letter was sent.

The Plaintiff contends that, even if Blatt satisfied § 1692g(a) by sending such a letter, the record reveals that he never received it, either because the Postal Service made an error, or because it was removed from his mailbox before he could retrieve it.  The Plaintiff asserts that because the words of the statute have not been met, the Plaintiff cannot rely on the "mailbox rule."  Consequently, the first communication that Plaintiff received concerning this debt was the service of the summons and complaint on October 20, 2005.

(3)

In its reply brief, Blatt contends it is undeniable that it sent an initial demand letter to the Plaintiff and that the letter contained the required

16

validation notice.  Blatt notes the Plaintiff has conceded that he cannot rebut these facts.  Moreover, the fact that he was experiencing "serious difficulties" with his mail is not relevant, given that Blatt is not responsible for what happens at Plaintiff's mailbox.  Blatt asserts that the FDCPA only requires the debt collector to send the notice, not to establish actual receipt.  Congress chose not to require debt collectors to send the validation notice by certified or registered mail or via personal service.

Accordingly, Blatt contends that the Plaintiff's assertion that he never received its January 2004 letter is irrelevant.  It is his burden to establish that Blatt never sent the letter, and he has acknowledged that he is unable to meet that burden.  Blatt asserts, therefore, that any claim that the January 2004 letter was not sent (or any claim premised on the alleged failure to send the letter) must be dismissed.

Blatt further alleges that the same uncontroverted evidence which establishes that Blatt sent the June 2004 letter also creates, pursuant to the "mailbox rule," a legal presumption that the letter was received.  See Boomer v. AT & T Corp., 309 F.3d 404, 415 n.5 (7th Cir. 2002).

17

Accordingly, the Plaintiff's thirty-day dispute period would have expired no later than mid-February 2004. Any dispute at the October 29, 2004 hearing would have been too late.

Blatt contends that the Plaintiff's attempt to create a discrepancy between Ken Wake's affidavit and his deposition testimony in another case is not persuasive. Blatt claims that Plaintiff points to a single question and answer exchange from Wake's deposition testimony in which Wake said that, although he could not specifically recall, the "daily download process" in place today was "probably the same" back in 1999-2003. Accordingly, Blatt alleges the testimony actually supports its position, instead of creating any genuine issue of fact.

Blatt further asserts that the "daily download process" is not at issue; it is clear that the Plaintiff's account was received and downloaded into Blatt's system. Blatt claims this occurred on December 30, 2003. For purposes of the "mailbox rule," however, Blatt alleges that the issue is whether it can show that the January 2, 2004 letter was properly addressed and mailed. See Boomer, 309 F.3d at 415 n.5. Blatt contends that Wake's

18

affidavit establishes that the letter was properly addressed and mailed. Moreover, Blatt disputes the Plaintiff's assertion that it may have "outsourced its mailing program to a vendor." Blatt further notes that Wake testified in the <u>Beler</u> case, where the initial demand letter was sent on October 28, 2003, that no letter vendor was involved. Accordingly, Blatt asserts that the Plaintiff has failed to create a genuine issue of material fact sufficient to defeat summary judgment on this issue.

Blatt next disputes the Plaintiff's argument that he has rebutted the presumption because he has affirmatively established that he never received the January 2004 letter. According to Blatt, the Plaintiff's self-serving and unsubstantiated assertions that he was having trouble with his mail delivery are insufficient to overcome the presumption of receipt. Blatt contends that none of these allegations are substantiated in any way, nor are the Plaintiff's "complaints with the U.S. Postal Service." Blatt further alleges that it is unclear whether the Plaintiff was ultimately able to recover the mail that he claims was stolen by neighborhood youths, or whether his neighbors ever returned his mail that was delivered to the wrong homes. It questions how

the Plaintiff would know that certain mail was taken from their mailbox before they had a chance to retrieve it, if they did not later recover that mail.  Citing <u>Nixon v. Arrow Financial Services</u>, 2003 WL 22427765 at *3 (N.D. Ill. Oct. 23, 2005), Blatt asserts that if arguments such as those of the Plaintiff were enough to overcome the presumption of receipt and create an issue of fact, then the "mailbox rule" would have little practical effect.  <u>See also</u> <u>Hartford Fire Insurance Co. v. A. Block Marketing, Inc.</u>, 2005 WL 1838447 at *8 (N.D. Ill. Aug. 2, 2005) (noting that defendant could not avoid the presumption by simply asserting, without presenting any evidence, that the dock manager to whom the notices were sent did not forward the notices to defendant).

> B. Plaintiff's summary judgment motion

In support of his motion for summary judgment, the Plaintiff alleges that even if Blatt sent the letter on January 2, 2004, the letter does not qualify as an "initial communication" within the meaning of § 1692g(a). The Plaintiff notes that the FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any

20

person through any medium." 15 U.S.C. § 1692a(2). He states, moreover, that Webster's defines "convey" as, among other things, "to impart or communicate by statement, suggestion, gesture, or appearance," or "to transfer or deliver to another." Webster's New Collegiate Dictionary, at 249 (1977).

The Plaintiff alleges that the unrebutted and uncontroverted evidence shows that even if the notice was sent, he never received it; accordingly, there was no "conveying of information regarding" the debt Blatt was attempting to collect. The Plaintiff asserts that without the debtor's receipt of the initial communication, it cannot constitute an "initial communication" pursuant to § 1692g(a). The Plaintiff claims, therefore, that the "initial communication" in this case was the summons and complaint served on him on October 20, 2004, because that was the first communication actually delivered to him. In that document, or within five days after it was served on the Plaintiff (and thus became an "initial communication"), the Plaintiff contends that Blatt was required to provide the notice information described in § 1692g(a)(1) through (5). See Thomas

v. Law Firm of Simpson v. Cybak, 392 F.3d 914, 917 (7th Cir. 2004)
(noting that the service of a summons and complaint could constitute an
"initial communication" under the FDCPA).

The Plaintiff notes that Blatt did not include any notice language in,
or within five days after service of, the summons and complaint. He further
alleges that the form letter Blatt claims to have mailed out violates the
FDCPA by suggesting only that written disputes are acceptable, when in fact
§ 1692g(a)(3) does not prohibit oral disputes.

The Plaintiff alleges that although the violations identified occurred
more than one year prior to the service of the 2004-SC-5497 complaint, and
so he does not seek relief as to any of those, the violations remain relevant
for context and as evidence of violations relevant to this Court's decision
about statutory penalties pursuant to 15 U.S.C. § 1692k(a). See 15 U.S.C.
§ 1692k(b)(1). The Plaintiff contends this case is not about whether notice
was ever sent; rather; it concerns his claim that Blatt violated § 1692g(b) by
failing to cease collection efforts upon Plaintiff's timely dispute of the debt.
According to the Plaintiff, he disputed the debt within thirty days after he

first received notice from Blatt.   This dispute was communicated unambiguously in written form; however, instead of ceasing collection efforts and verifying  the debt, Blatt continued collection efforts by setting the matter for trial.

The Plaintiff next claims that § 1692g(b) is not concerned with when a debt collector sends notice; rather, it focuses on when a debtor receives notice.  In this case, the Plaintiff states that he first received notice when served with the summons and complaint on October 20, 2004.

As for Blatt's "mailbox rule" argument, the Plaintiff asserts that the presumption should not apply in this case.  He claims there is no definite proof that the letter was ever actually mailed; Blatt can produce no witness or other specific evidence that the particular letter addressed to Moore, with postage affixed, actually made its way into the postal system.  The Plaintiff alleges that given that Blatt was mailing around 350 pieces of mail per day, common sense dictates that some letters would not make it to the post office.  Moreover, Blatt did not even keep a copy of the letter that was sent, but can only point to a computer-generated notation as its proof of mailing.

23

Next, the Plaintiff reiterates that the statutory provision at issue, 15 U.S.C. § 1692g(b), is concerned with a debtor's receipt of the notice, and Blatt can offer no proof of receipt. He notes that Blatt could have sent the letter via certified mail, but it did not. Moreover, Blatt could have followed up with a phone call after sending the letter, but the Plaintiff claims that it did not. Accordingly, he claims that the "mailbox rule" presumption should not apply. The Plaintiff claims that even if the presumption were to apply, it has been rebutted in this case, give the difficulties with mail delivery that the Plaintiff and his fiancé were experiencing in January 2004. Therefore, the Plaintiff claims that he first received notice of the debt on October 20, 2004, and it was disputed in a timely fashion.

C. The Court's conclusions

After carefully considering the arguments raised by the parties in both motions for summary judgment, the Court concludes that Blatt is entitled to summary judgment. Pursuant to the "mailbox rule," the Court finds that there is no genuine issue of material fact that Blatt sent the initial demand letter containing the requisite validation notice to the Plaintiff on January

24

2, 2004.  Given that the Plaintiff did not dispute this debt within thirty days of his receipt of the letter (in early to mid February 2004), Blatt was under no obligation to suspend collection efforts.

Based on Ken Wake's affidavit, the Court concludes Blatt has established that the January 2, 2004 letter was mailed in a manner consistent with its regular office practices and procedures.  By referring to Wake's deposition testimony in another case, the Plaintiff attempts to argue that he was not completely familiar with Blatt's mailing process.   The Plaintiff specifically notes that Wake was unable to testify as to whether the daily download process was the same when the letter at issue in this case was allegedly mailed as it was between 1999 and 2003.  Moreover, Wake did not know precisely what type of Pitney Bowes machine was used by the firm at that time.  Wake did testify, however, that Blatt was constantly looking for ways to more efficiently perform the mailing process.

The Plaintiff emphasizes Wake testified that Blatt may have "outsourced" its mailing program to a vendor at the time the letter was allegedly mailed.  In his deposition testimony in <u>Beler</u>, Wake stated, "Prior

25

to my involvement in this process, I know that we used to use a letter vendor that sent out volumes for us to help – to help process the volumes that we have.   We pulled that back in-house primarily to maintain controlling, make sure we're in compliance with that process." Wake went on to state, however, that he knew that a vendor did not send the letter to the Plaintiff because it had been reviewed and signed by a partner at Blatt. When asked whether he was confident that the letter to the Plaintiff went out from Blatt's office and not a vendor, Wake responded, "Absolutely 100 percent sure that this went out from our office."   The Court concludes, therefore, that Blatt has established that the letter was mailed in a manner consistent with its regular and reliable office practices.

The Plaintiff is unable to overcome the presumption of delivery.  Both the Plaintiff and his fiancé state that it is possible that the letter was sent on January 2, 2004, but it never arrived at the home that they shared.  The Plaintiff and his fiancé have pointed to various problems with the mail delivery to their house.  These problems range from mail carriers delivering their mail to the wrong home to neighborhood children stealing mail from

26

their mailbox.  They also claim that mail was sometimes found in their driveway and that expected mail sometimes did not arrive.  In support of these allegations, the Plaintiff relies on his affidavit and that of his fiancé.  There is no additional corroboration, such as any record of the Plaintiff's alleged complaints with the U.S. Postal Service.  Moreover, the Plaintiff does not indicate whether he eventually received his mail that was initially mis-delivered.

While recognizing that it is difficult to prove a negative, the Court notes that if a party could overcome presumption of the "mailbox rule" by simply stating that he did not receive the mail, the presumption that the letter was properly delivered would mean very little.  As Blatt notes, moreover, it should not be held responsible for whatever problems were occurring with the Plaintiff's mail delivery.

The Plaintiff argues Blatt could have ensured delivery by mailing the letter via certified or registered mail or some other means by which proof of delivery could easily be established via a signature.  Although this may be true, Congress has imposed no such requirement on debt collectors.  See

Walters, 2004 WL 1622217 at *6 ("In sum, any purported advantage of a certified mail requirement does not outweigh the intent of the legislature, which is demonstrated through the plain text of § 1692g(a)(3)."). It would be inappropriate for the Court to discover such a requirement when none exists in the statute's text.

Based on the foregoing, the Court concludes that the required validation notice was provided in the initial demand letter sent by Blatt on January 2, 2004. The Court further finds that the letter qualified as an "initial communication" within the meaning of § 1692g(a). Because the Plaintiff did not dispute the debt within thirty days of receipt, Blatt is entitled to summary judgment on Plaintiff's FDCPA claims.

### III. CONCLUSION

Having concluded that Blatt is entitled to summary judgment for the reasons previously noted, the Court need not address the other arguments advanced by the parties as to why each is entitled to summary judgment. It is worth noting, however, that even if the Plaintiff did not receive the January 2, 2004 letter from Blatt, he still would not be entitled to summary

judgment because he failed to notify Blatt in writing that the debt was disputed, as required by 15 U.S.C. § 1692g(b).   The Court is unable to conclude that a docket entry from the Sangamon County Circuit Court constitutes a "consumer notif[ying] the debt collector in writing," pursuant to § 1692g(b).   Accordingly, Blatt is entitled to summary judgment for that additional reason.

Ergo, the Defendant's motion for summary judgment [d/e 8] is ALLOWED.   The Plaintiff's motion for summary judgment [d/e 20] is DENIED.   The Defendant's motion for summary judgment due to the Plaintiff's failure to respond [d/e 17] is DENIED.   The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

ENTER: June 29, 2006

FOR THE COURT:

s/Richard Mills
United States District Judge

29